IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| **BRANCH BANKING & TRUST COMPANY,** | ] ] ] | |
| **Plaintiff,** | ] ] | |
| v. | ] ] | 4:18-cv-00241-ACA |
| **NU HOT, INC., et al.,** | ] ] ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff Branch Banking & Trust Company's ("BB&T") motion for default judgment, (doc. 19).

BB&T filed its complaint against Nu Hot, Inc., Nu Personnel, Inc., C3D Services, LLC, and John R. Pennington, asserting that it issued commercial loans to Nu Hot, Nu Personnel, and C3D Services, and Mr. Pennington served as the guarantor on all of those loans. (Doc. 1). Defendants have defaulted on the loans, so BB&T asserts claims for breach of contract and unjust enrichment against each Defendant, seeking to recover the principal, accrued interest, late charges, and attorneys' fees and costs of collection. (*Id.*).

The court **WILL GRANT IN PART** and **DENY IN PART** the motion for default judgment. The court **WILL ENTER DEFAULT JUDGMENT** in favor of BB&T and against Nu Hot, Nu Personnel, C3D Services, and Mr. Pennington

on BB&T's claims for breach of contract, but the court **WILL DISMISS** BB&T's claim for unjust enrichment.

I. **BACKGROUND**

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quotation marks omitted)). Accordingly, the court takes as true the well-pleaded allegations of BB&T's complaint.

A. The Nu Hot Loans

On October 2, 2014, BB&T made a loan to Nu Hot in the amount of $100,000, with interest accruing at the "[v]ariable rate of the Bank's Prime Rate plus 1.000% per annum to be adjusted Monthly." (Doc. 1 at 2; Doc. 1-1 at 1). All payments on the loan were due on October 6, 2017. (Doc. 1 at 2–3; Doc. 1-1 at 1; Doc. 19-1 at 25). The promissory note provided for a late fee of five percent "of any installment past due for ten (10) or more days." (Doc. 1-1 at 2). It also provided: "If this Note is placed with an attorney for collection, the undersigned agrees to pay . . . all costs of collection, including but not limited to reasonable attorneys' fees." (*Id.* at 4).

On August 26, 2016, BB&T made a second loan to Nu Hot in the amount of $650,000, with the same interest accruing from that date. (Doc. 1 at 3; Doc. 1-2 at 2). Like the first loan, the second loan contained provisions for late fees and the

payment of reasonable attorneys' fees in connection with collection efforts. (Doc. 1-2 at 2, 4). All payments were due on August 26, 2017. (Doc. 1 at 3–4; Doc. 1-2 at 2).

Despite a demand letter sent after the loans matured, Nu Hot did not pay any part of the principal on either loan. (Doc. 1 at 5, 12; Doc. 1-4). According to an affidavit by Steven W. Blevins, BB&T's Senior Vice President, as of July 31, 2018, Nu Hot owed BB&T $750,000 in principal, $38,817.09 in accrued interest, and $351.64 in late charges, for a total of $789,168.73, with interest continuing to accrue at a rate of $14.60 per diem on the first loan and $108.33 per diem on the second loan. (Doc. 19-1 at 8).

B.   The Nu Personnel Loan

On April 21, 2015, BB&T loaned Nu Personnel $200,000, with interest accruing at the "[v]ariable rate of the Bank's Prime Rate plus 1.000% per annum to be adjusted Monthly." (Doc. 1 at 5–6; Doc. 1-5 at 2). The promissory note provided for a late fee of five percent "of any installment past due for ten (10) or more days." (Doc. 1-5 at 2). It also provided for the payment of "reasonable attorneys' fees" if the note was placed with an attorney for collection. (*Id.* at 4). BB&T and Nu Personnel later modified the loan amount from $200,000 to $165,000 and set the date of maturity for August 26, 2017. (Doc. 1 at 6; Doc. 19-1 at 55).

3

Despite a demand letter sent after the loan matured, Nu Personnel did not pay any part of the principal. (Doc. 1 at 7; Doc. 1-7 at 2; Doc. 1-7). According to Mr. Blevins' affidavit, as of July 31, 2018, Nu Personnel owed BB&T $165,000 in principal, $8,545.85 in accrued interest, $56.00 in fees, and $72.08 in late charges, for a total of $173,673.93, with interest continuing to accrue at a rate of $27.50 per diem. (Doc. 19-1 at 12).

### C. The C3D Services Loan

On January 20, 2015, BB&T loaned C3D $248,000, with interest accruing at a "[f]ixed ratio of 5.1500% per annum." (Doc. 1 at 8; Doc. 1-8 at 2). The promissory note provided for a late fee of five percent "of any installment past due for ten (10) or more days" and for "reasonable attorneys' fees" related to efforts to collect on the loan. (Doc. 1-8 at 2, 4). The C3D Services loan was secured by a mortgage on real property owned by C3D Services. (Doc. 1 at 9; Doc. 1-9).

C3D Services agreed to make monthly payments of $1,990.21, with the final payment due on January 20, 2020. (Doc. 1 at 8; Doc. 1-8 at 2). The promissory note provided:

> The failure to pay any part of the principal or interest when due on this Note . . . by any affiliate of the undersigned . . . shall be a material default hereunder and this Note and other debts due the Bank by any one or more of undersigned shall immediately become due and payable at the option of the Bank without notice or demand of any kind, which are hereby waived.

4

(Doc. 1 at 10; Doc. 1-8 at 3). Nu Hot and Nu Personnel are affiliates of C3D Services. (Doc. 1 at 10).

Based on the defaults by Nu Hot and Nu Personnel, BB&T notified C3D Services that its loan was also in default, but C3D Services did not pay any part of the principal. (Doc. 1 at 10–11; Doc. 1-11 at 2). As a result, BB&T foreclosed on the mortgaged property and applied the proceeds to C3D Service's indebtedness. (Doc. 19-1 at 16). According to Mr. Blevins' affidavit, as of July 31, 2018, C3D Services still owed BB&T $17,037.95 in principal, $4,647.00 in accrued interest, $6,928.09 in fees, and $928.14 in late charges, for a total of $29,541.18, with interest continuing to accrue at a rate of $2.71 per diem. (*Id.* at 17).

D.  Mr. Pennington's Guarantees

Mr. Pennington entered guaranty agreements for each of the four loans described above. (Doc. 1 at 4–5, 7, 9–10; Doc. 1-3; Doc. 1-6; Doc. 1-10). Each guaranty agreement provided that he "absolutely and unconditionally guarantee[d] to Bank . . . the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities . . . of Borrower . . . together with interest." (Doc. 1-3 at 2, 5; Doc. 1-6 at 2; Doc. 1-10 at 2). The guarantee agreements also bound Mr. Pennington "to indemnify the Bank for all costs of collection, including but not limited to the costs of . . . foreclosure, reasonable attorneys' fees, and court costs incurred by the Bank." (Doc. 1-3 at 2, 5; Doc. 1-6 at 2; Doc. 1-10 at 2).

5

BB&T copied Mr. Pennington on each of the demand letters it sent to Nut Hot, Nu Personnel, and C3D Services. (Doc. 1-4 at 3; Doc. 1-7 at 3; Doc. 1-11 at 3).

E. This Lawsuit

In February 2018, BB&T filed this lawsuit, asserting that Nu Hot, Nu Personnel, C3D Services, and Mr. Pennington had breached their contracts with BB&T ("Count One through Four"), and that Defendants were unjustly enriched ("Count Five"). (Doc. 1 at 11–16). None of the defendants has entered an appearance or otherwise defended this case, and the Clerk has entered default against each of them. (Doc. 14).

II. DISCUSSION

BB&T seeks default judgment against Nu Hot in the amount of $789,168.73; against Nu Personnel in the amount of $173,673.93; against C3D Services in the amount of $29,541.18; and against Mr. Pennington in the amount of $992,383.84. (Doc. 19 at 5–6). It also seeks attorneys' fees and costs in the amount of $22,701.87. (*Id.*). The court will first address whether BB&T has established entitlement to an entry of default judgment as to liability against each defendant, and then whether it is entitled to a default judgment as to damages, and finally whether it is entitled to attorneys' fees and costs.

1. Liability

Federal Rule of Civil Procedure 55 establishes a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the Clerk of Court must enter the party's default. Fed. R. Civ. P. 55(a). Second, if the defendant is not an infant or an incompetent person, the court may enter a default judgment against the defendant as long as the well-pleaded allegations in the complaint state a claim for relief. Fed. R. Civ. P. 55(b); *Nishimatsu Contr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

Here, the Clerk has already entered default against Nu Hot, Nu Personnel, C3D Services, and Mr. Pennington, so the court must determine whether the well-pleaded factual allegations support BB&T's request for a declaratory judgment. BB&T's motion for default judgment does not specify whether it seeks default as to the breach of contract counts (Counts One through Four), the unjust enrichment count (Count Five), or all five counts. (*See* Doc. 19). As a result, the court will address all five counts.

Under Alabama law, "[t]he elements of a breach-of-contract claim . . . are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

7

contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). And an unjust enrichment claim requires a plaintiff to show: "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, LLC*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)). But a party cannot recover for both breach of contract and unjust enrichment. *Univalor Trust, S.A. v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) ("[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law.").

The court is satisfied that the evidence and the well-pleaded allegations in the complaint state a claim for breach of contract against Nu Hot, Nu Personnel, C3D Services, and Mr. Pennington, but not that it states a claim for unjust enrichment. Nu Hot, Nu Personnel, and C3D Services each entered into valid loan agreements with BB&T, and Mr. Pennington agreed to act as the guarantor for each loan. Nu Hot, Nu Personnel, C3D Services, and Mr. Pennington did not perform on those agreements because they failed to make the required payments, and BB&T has been harmed by their non-performance. The court concludes that

those facts are sufficient to warrant entry of default judgment on BB&T's breach of contract claims (Counts One through Four). The court **WILL GRANT** the motion for default judgment as to Counts One through Four, and **WILL ENTER DEFAULT JUDGMENT** in favor of BB&T and against Nu Hot, Nu Personnel, C3D Services, and Mr. Pennington, for breach of contract.

But because BB&T is entitled to default judgment on the claims for breach of contract, it cannot recover on its claim for unjust enrichment. *See Univalor Trust, S.A.*, 315 F.R.D. at 382. Accordingly, the court **WILL DENY** the motion for default judgment as to Count Five, and it **WILL DISMISS** that claim.

2. Damages

Even when a defendant has defaulted, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). Unless a plaintiff's claim against a defaulting defendant is for "a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), the court must hold an evidentiary hearing to determine the amount of damages. *Adolph Coors Co.*, 777 F.2d at 1543; *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).

Here, BB&T seeks a sum certain and has provided evidence to support its request. It provided the promissory notes setting out the amount of the loans, the amount of interest and when it would accrue, and the amount of late fees that would become due if applicable. It also provided an affidavit from Mr. Blevins, in his capacity as a Senior Vice President of BB&T, in which he attests that his review of BB&T's business records shows the following amounts due:

<u>The Nu Hot Loans</u>

| | |
|---|---|
| Principal | $750,000 |
| Accrued Interest | $38,817.09 |
| Late Charges | $351.64 |
| Total | $789,168.73 |

<u>The Nu Personnel Loan</u>

| | |
|---|---|
| Principal | $165,000 |
| Accrued Interest | $8,545.85 |
| Fees and Late Charges | $128.08 |
| Total | $173,673.93 |

<u>The C3D Services Loan</u>

| | |
|---|---|
| Principal | $17,037.95 |
| Accrued Interest | $4,647 |
| Fees and Property Taxes Relating to the Mortgaged Property | $6,928.09 |
| Late Charges | $928.14 |
| Total | $29,541.18 |

(Doc. 19-1 at 8, 12, 16–17).

In addition, Mr. Blevins' affidavit, supported by the promissory notes, explains that pre-judgment interest continues to accrue as follows: (1) $14.60 per diem for Nu Hot's first loan; (2) $108.33 per diem for Nu Hot's second loan; (3) $27.50 per diem for Nu Personnel's loan; and (4) $2.71 per diem for C3D Services' loan. (Doc. 19-1 at 8, 12, 17).

Finally, BB&T also seeks to hold Mr. Pennington jointly and severally liable for the default of each of those loans. (Doc. 19 at 4). The court has already held that BB&T has met its burden of establishing Mr. Pennington's liability. Accordingly, the court **WILL GRANT** BB&T's motion for default judgment and **ENTER DEFAULT JUDGMENT** as follows: (1) in favor of BB&T and against Nu Hot and Mr. Pennington, jointly and severally, in the amount of $789,168.73, plus pre-judgment interest of $14.60 per diem for Nu Hot's first loan and $108.33 per diem for Nu Hot's second loan, to run from August 1, 2018; (2) in favor of BB&T and against Nu Personnel and Mr. Pennington, jointly and severally, in the amount of $173,673.93, plus pre-judgment interest of $27.50 per diem, to run from August 1, 2018; and (3) in favor of BB&T and against C3D Services and Mr. Pennington, jointly and severally, in the amount of $29,541.18, plus pre-judgment interest of $2.71 per diem, to run from August 1, 2018.

3. <u>Attorneys' Fees</u>

Finally, BB&T seeks $21,416.49 in attorneys' fees and $1,285.39 in costs. (Doc. 19 at 2). Each promissory note and guaranty agreement contained a provision for BB&T to recover its costs incurred in connection with its efforts to collect on the loans, including "reasonable attorneys' fees." "In Alabama, attorneys' fees are recoverable . . . when provided in a contract . . . ." *Eagerton v. Williams*, 433 So. 2d 436, 450 (Ala. 1983). The court is therefore satisfied that BB&T is entitled to recover its costs and reasonable attorneys' fees from Defendants, jointly and severally.

The next question is whether $21,416.49 in attorneys' fees is reasonable. BB&T submits an affidavit from N. Christopher Glenos, a partner at Bradley Arant Boult Cummings LLP ("Bradley"), which represents BB&T in this case. (Doc. 19-2). Mr. Glenos attests that he and other employees at Bradley did the following amounts of work at the following rates:

| Title | Hours | Average Rate | Fee |
|---|---|---|---|
| Partner at Bradley | 28.50 | $434.23 | $12,375.44 |
| Counsel | 12.60 | $439.00 | $5,531.40 |
| Associate | 17.70 | $188.09 | $3,329.26 |
| Paralegal | 0.60 | $108.15 | $64.89 |
| Paralegal | 0.50 | $231.00 | $115.50 |

Mr. Glenos also attests that BB&T has incurred $17.40 in copy costs; $422.00 in filing fees; $66.50 in Pacer charges; and $779.49 in publication and legal notices, for a total of $1,285.39.

Based on the expertise required in the case, the amount of the defaulted loans, and the time expended, the court finds the attorneys' fees and costs requested reasonable. The court **WILL GRANT** BB&T's request for attorneys' fees and costs against Nut Hot, Nu Personnel, C3D Services, and Mr. Pennington, in the amount of $22,701.88. As requested by BB&T, the court will assign one third of the total attorneys' fees and costs to each of the corporate defendants, with Mr. Pennington jointly and severally liable for those fees and costs.

### III. CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** BB&T's motion for a default judgment.

The court **WILL ENTER DEFAULT JUDGMENT** in favor of BB&T and against Nu Hot and Mr. Pennington, jointly and severally, in the following amounts: (1) $750,000 in principal; (2) $38,817.09 in accrued interest; (3) $351.64 in late charges; (4) pre-judgment interest of $14.60 per diem for Nu Hot's first loan and $108.33 per diem for Nu Hot's second loan, to run from August 1, 2018; (5) $7,567.29 in attorneys' fees and costs; and (6) post-judgment interest at the statutory rate in accordance with 28 U.S.C. § 1961.

The court **WILL ENTER DEFAULT JUDGMENT** in favor of BB&T and against Nu Personnel and Mr. Pennington, jointly and severally, in the following amounts: (1) $165,000 in principal; (2) $8,545.85 in accrued interest; (3) $128.08 in fees and late charges; (4) pre-judgment interest of $27.50 per diem, to run from August 1, 2018; (5) $7,567.29 in attorneys' fees and costs; and (6) post-judgment interest at the statutory rate in accordance with 28 U.S.C. § 1961.

The court **WILL ENTER DEFAULT JUDGMENT** in favor of BB&T and against C3D Services and Mr. Pennington, jointly and severally, in the following amounts: (1) $17,037.95 in principal; (2) $4,647 in accrued interest; (3) $6,928.09 in fees and property taxes relating to the mortgaged property; (4) $928.14 in late charges; (5) pre-judgment interest of $2.71 per diem, to run from August 1, 2018; (6) $7,567.29 in attorneys' fees and costs; and (7) post-judgment interest at the statutory rate in accordance with 28 U.S.C. § 1961.

The court **WILL DENY** the motion as to BB&T's claim of unjust enrichment, and **WILL DISMISS** the unjust enrichment claim.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this October 23, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE